**In re David J. SLUSS & Patricia S. Sluss, Debtors.**

**Bankruptcy No. 1–89–02768.**

United States Bankruptcy Court, E.D. Tennessee.

Nov. 20, 1989.

Harold L. North, Jr., of Ray & North, Chattanooga, Tenn., for debtors.

Bruce C. Bailey of Chambliss, Bahner, Crutchfield, Gaston & Irvine, Chattanooga, Tenn., for creditor, David L. Harris.

## MEMORANDUM

RALPH H. KELLEY, Chief Bankruptcy Judge.

A creditor, David Harris, has filed a motion for relief from the automatic stay so that he can collect a debt by withholding payment to the debtor of commissions that he would otherwise pay to the debtor. The facts are as follows.

The debtor owes two debts to Harris.

One debt is a debt for a personal loan from Harris to the debtor. Harris does not seek to recover it by setoff or recoupment. He will be paid as provided in the debtor's chapter 13 plan.

The other debt arose out of one or two contracts between the debtor and Harris, as general agent for Massachusetts Mutual Life Insurance Company.

The debtor became an agent for the insurance company by entering into a Career Contract with Harris as general agent. The Career Contract entitles the debtor to commissions on insurance sold by him and to renewal commissions.

The Career Contract also provides that commissions are not payable to the debtor until payment to the insurance company of the premiums on which the commissions are based. Though this rule is subject to contrary rules of the insurance company, the stipulations of fact do not say that the company's rules are different. The contract's general rule is also subject to two other exceptions, but they are irrelevant.

Under the Career Contract Harris can set off against any commissions due the debtor any debts the debtor owes to Harris under either the Career Contract or any other contract between the debtor and Harris as general agent.

After a few years, the debtor entered into the District Manager Contract with Harris. Under the District Manager Contract, the debtor undertook to recruit new agents and supervise them in return for override commissions on the new agents' sales.

The debtor terminated the District Manager Contract in December, 1988, before he filed his chapter 13 case in August, 1989.

The debtor's other debt to Harris is for advance payment of commissions. Harris has not divided the debt into advance payment of override commissions under the District Manager Contract and advance payment of ordinary commissions under the Career Contract.

The debtor's chapter 13 plan provides for the debts to Harris as general unsecured claims to be paid 100%. The plan was confirmed on September 27, 1989, without any objections by Harris.

Harris has withheld payment of renewal commissions on renewal premiums paid after the debtor filed his chapter 13 case. In some instances, the renewal due dates were before the debtor filed his chapter 13 case, but the renewal premiums were paid afterward. In those cases renewal of the policy was retroactive to the renewal due date.

## DISCUSSION

◼ The court begins with an explanation of the distinction between prepetition and postpetition debts. A prepetition debt is a debt incurred before the debtor began his chapter 13 case by filing a chapter 13 petition. Postpetition debts are debts incurred after filing of the bankruptcy petition.

Bankruptcy Code § 553 allows set-off of mutual prepetition debts between the creditor and the debtor. Section 553, however, does not allow a creditor to collect the prepetition debt to it by withholding payment of its postpetition debt to the debtor. 11 U.S.C.A. § 553(a) (West 1979); *Prudential Ins. Co. v. Nelson,* 101 F.2d 441, 39 Am.Bankr.Rep. (N.S.) 173 (6th Cir.1939), *cert.den.* 308 U.S. 583, 60 S.Ct. 106, 84 L.Ed. 489 (1939); *Paris v. Transamerica Ins. Group (In re Buckley & Associates),* 67 B.R. 331 (Bankr.E.D.Tenn.1986), *rev'd on other points,* 78 B.R. 155 (E.D.Tenn. 1985).

In this case, the debtor argues that the creditor wants permission to violate this rule by setting off his postpetition debt to the debtor for renewal commissions against the debtor's prepetition debt to him for the commission advance. The creditor argues that this is an allowable recoupment instead of a prohibited set-off.

■ The argument for recoupment, as opposed to setoff, has been popular with creditors attempting to avoid one or more of the restrictions on set-off under Bankruptcy Code § 553. The court has already mentioned one restriction—the rule that a creditor cannot set-off a postpetition debt to the debtor against the debtor's prepetition debt to it. Section 553 imposes other limitations. Set-off after the filing of a bankruptcy petition requires relief from the automatic stay. Some set-offs before bankruptcy can be recovered as preferential payments. Furthermore, set-off can be denied in the sound discretion of the court even though set-off would be allowed if there were no bankruptcy case. 11 U.S. C.A. § 553(a), (b) (West 1979 & Supp.1989); *Duvoisin v. Foster (In re Southern Industrial Banking Corp.)*, 809 F.2d 329 (6th Cir.1987).

■ The usual distinction between set-off and recoupment is that recoupment arises out of a single contract or transaction between the parties whereas set-off can be based on unrelated transactions between the same parties. *Paris v. Transamerica Ins. Group (In re Buckley & Assoc., Inc.)*, 67 B.R. 331 (Bankr.E.D.Tenn. 1986), *rev'd on other points*, 78 B.R. 155 (E.D.Tenn.1987).

The argument can be made that § 553 does not apply whenever a single contract or transaction is involved because § 553 applies only to set-off rather than recoupment. *Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (Bankr.M.D.Tenn.1981).

The problem is defining recoupment. Courts have allowed recoupment as a remedy distinct from set-off when the debtor failed to meet the conditions to make the creditor liable or when the creditor had already paid its debt to the debtor.

In one case a record company advanced royalties to a singer before his bankruptcy and retained royalties it received after his bankruptcy. The trustee in the singer's bankruptcy case argued that this was an unallowable set-off of the record company's postpetition debt to the debtor for royalties against his debt to the record company for the prepetition advance of royalties. The district court disagreed. It held that the record company had already paid the debtor the royalties it was retaining and was not liable a second time for the same royalties. *Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (M.D.Tenn.1981).

The no-double-payment theory of recoupment was explained in *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.)*, 782 F.2d 155, 14 Bankr.Ct.Dec. 133 (10th Cir. 1986). The theory has been applied or distinguished in other cases. *Electronic Metal Products, Inc. v. Honeywell, Inc.*, 95 B.R. 768 (D.Colo.1989); *United States v. Midwest Service & Supply Co.*, 44 B.R. 262 (D.Utah 1983); *In re Yonkers–Hamilton Sanitarium, Inc.*, 22 B.R. 427, 9 Bankr.Ct.Dec. 505 (Bankr.S.D.N.Y.1982), *aff'd* 34 B.R. 385 (S.D.N.Y.1983); *Towne Realty, Inc. v. A–1 Hydro–Mechanics Corp.*, 92 B.R. 451 (Bankr.D.Hawaii 1988).

This kind of recoupment may apply only when the contract is still executory, and the debtor assumes it in order to collect the postpetition benefits from the creditor. See *Ashland Petroleum Co. v. Appel*, cited above, and *Lee v. Schweiker*, 739 F.2d 870, 11 Collier Bankr.Cas.2d 834 (3d Cir.1984).

The other, and more difficult, concept of recoupment as a remedy distinct from set-off can be illustrated by a breach of contract case. The debtor sues the creditor for the full contract price, and the creditor counter-sues for breach of contract. To the extent the creditor proves failure of the debtor to perform the contract, the debtor's right to payment is reduced, and the creditor does not owe a debt to the debtor. *Cf. Rakozy v. Reiman Construction (In re Clowards, Inc.)*, 42 B.R. 627 (Bankr.D.Idaho 1984). The problem in this kind of case is that a creditor's damages for breach of contract may include more than a reduction

in liability of the creditor to the debtor. 4 J. Moore, Collier on Bankruptcy ¶ 68.03 at 856–858 (14th ed.1979) (discussion of counterclaims).

The debtor in this case has done everything to make Harris liable for the renewal commissions except pay the prior debt to Harris for the commission advances.

This case is not like a breach of contract case in which recoupment can be treated as a distinct remedy from set-off on the ground that the creditor is not liable to debtor for some reason other than failure of the debtor to pay a debt to the creditor. The creditor's only ground for denying liability to the debtor is that the debtor owes him a debt for the advanced commissions and the debt should be set-off. The set-off provision in the Career Contract is no more than a written agreement to the creditor's right to offset mutual debts.

The facts also do not fit the pattern of the double-payment cases. The postpetition renewal commissions are not commissions that the creditor advanced to the debtor earlier and should not be required to pay again.

■ The court's reasoning does not run afoul of the concept of § 553 that it only preserves set-off rights under non-bankruptcy law. The court has reached the conclusion that "any right ... to offset a mutual debt," as used in § 553, may include rights under a single contract involving multiple transactions, despite the loose characterization of such rights as recoupment rather than set-off. 11 U.S.C.A. § 553(a) (West 1979).

The Bankruptcy Appellate Panel for the Ninth Circuit reached a similar conclusion in *California Canners & Growers v. Military Distributors of Virginia, Inc.*, 62 B.R. 18 (9th Cir.B.A.P.1986).

■ The concurring opinion by Judge Elliott proposes the same rule for recoupment as for set-off. Even if only one contract is involved, the creditor cannot collect a prepetition debt by refusing to pay its postpetition debt to the debtor. Judge Elliott may be right. The proposed rule appears to be workable in single contract-

multiple transaction cases such as this one and the case before the appellate panel. There can be a problem distinguishing this kind of case from the no-double-payment cases. The case relied upon by Judge Elliott suggests that the no-double-payment cases are wrong. *Quittner v. Los Angeles Steel Casting Co.*, 202 F.2d 814 (9th Cir. 1953). Part of the problem is that the no-double-payment cases involve executory contracts. Also, the no-double-payment cases might be classified as involving neither set-off nor recoupment. In any event, the court believes that Harris's rights should be treated as set-off rather than recoupment, since the debts arose from separate transactions, even assuming they arose under only one contract.

■ Harris's debt to the debtor for renewal commissions is clearly a postpetition debt. The Career Contract provides that commissions are not payable to the debtor until the premiums are paid. Thus, it does not make a difference that some of the renewal due dates were prepetition. If the premium was paid postpetition, Harris's debt for the commission is a postpetition debt.

The result is that Harris is not allowed to retain the renewal commissions because he would be collecting the debtor's prepetition debt to him by setting off his postpetition debt to the debtor.

The court also finds this case to be indistinguishable from *In re Buckley & Associates, Inc.* to some extent. *Paris v. Transamerica Ins. Group (In re Buckley & Associates, Inc.)*, 67 B.R. 331 (Bankr.E.D. Tenn.1986), *rev'd on other points* 78 B.R. 155 (E.D.Tenn.1987).

The court assumes that the debt for the commission advances arose at least partly from advance payment of override commissions under the District Manager Contract. Collecting this debt under the District Manager Contract by withholding renewal commissions under the Career Contract is set-off of debts under separate contracts rather than recoupment under a single contract or transaction.

Putting the right to set-off in writing in the Career Contract does not change set-off into recoupment or make the two contracts one. Likewise, the two contracts are not one on the theory that the debtor had to be an agent in order to be a district manager. The debtor could never have become liable for an advance on override commissions without voluntarily choosing to enter into the District Manager Contract.

Thus, to the extent the debtor owes Harris advance override commissions under the District Manager Contract, Harris is asking for set-off of debts under different contracts, not recoupment. Set-off is not allowable because Harris's debt to the debtor for renewal commissions is a post-petition debt.

■ The courts have held that a debtor must provide adequate protection when a creditor is denied set-off. *Hoffman v. Portland Bank (In re Hoffman)*, 51 B.R. 42 (Bankr.W.D.Ark.1985); *In re Braniff Airways, Inc.*, 42 B.R. 443 (Bankr.N.D.Tex. 1984); *In re Perry*, 26 B.R. 599 (Bankr.E. D.Pa.1983). A creditor who is forced to pay its prepetition debt to the debtor is in effect giving up the collateral securing the debtor's prepetition debt to it. 11 U.S.C.A. § 506(a) (West 1979). However, the requirement of adequate protection applies only when the creditor has a right of set-off under § 553. Since Harris does not have a right to set-off mutual prepetition debts under § 553, adequate protection is not required. 11 U.S.C.A. §§ 553(a) & 506(a) (West 1979); *In re Braniff Airways, Inc.*, 42 B.R. 443 (Bankr.N.D.Tex.1984).

■ The last question is whether Harris is entitled to adequate assurance that the debt to him will be promptly paid. The debtor assumed the Career Contract as an executory contract. The debtor can assume an executory contract only if he cures any existing default or provides adequate assurance that he will cure the default promptly. 11 U.S.C.A. § 365(b) (West Supp.1989); see also 11 U.S.C.A. §§ 1321 & 1322(b)(7) (West 1979 & Supp.1989).

The set-off provision in the Career Contract allows Harris to argue that the debtor is in default under the Career Contract if he owes a debt under the District Manager Contract.

The right to set-off debts under two different contracts, even if the right is written into both contracts, does not automatically make a debt under one contract a debt or a default under the other contract. To the extent the debt to Harris arose under the District Manager Contract, Harris is not entitled to adequate assurance because the debt is not a debt or a default under the Career Contract that was assumed.

To the extent the debt to Harris arose from advance payment of commissions under the Career Contract, Harris might be entitled to adequate assurance of payment.

Harris has two problems with arguing that he is entitled to adequate assurance.

■ First, Harris may be bound by the confirmed chapter 13 plan. *United States v. Norton*, 717 F.2d 767, 10 Bankr.Ct.Dec. 1337, 9 Collier Bankr.Cas.2d 336 (3rd Cir. 1983).

Second, adequate assurance is required when there is a default. The debt to Harris is not a default to be cured as far as the court can tell. The Career Contract assumes that the debtor may owe a debt to Harris and provides for its collection by withholding commissions. It does not say that owing a debt is a default or that failure to pay the debt on demand is a default.

Harris so far has not proved that he is entitled to adequate assurance. Accordingly, the court will not at this time hold that adequate assurance is required.

The court will enter an order denying relief from the automatic stay, denying adequate protection, and denying adequate assurance of prompt payment of the debt for advance commissions.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.